IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SYNCHVIEW TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BLUE RIDGE CABLE TECHNOLOGIES, INC., <br><br> Defendant. | CIVIL ACTION FILE <br><br> NO. _____ <br><br> **Jury Trial Demanded** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff SynchView Technologies, LLC ("SynchView" or "Plaintiff") files this Complaint for Patent Infringement against Defendant Blue Ridge Cable Technologies, Inc. ("Blue Ridge" or "Defendant"), and states as follows:

### THE PARTIES

1. Plaintiff is a limited liability company organized and existing under the laws of the State of Georgia, having its principal office at 4725 Peachtree Corners Circle, Suite 230, Atlanta, GA 30092.

2. Defendant is a Pennsylvania corporation with a principal office at 613 3rd Street, Palmerton, PA 18071. Defendant also maintains a regular and established place of business in Lancaster County at 804 Academy Heights Ave., Ephrata, PA 17522, which is within this Judicial District.

## JURISDICTION AND VENUE

3. This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

4. This Court has personal jurisdiction over Defendant on the grounds that Defendant is an entity formed and existing under the laws of the State of Pennsylvania.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) on the grounds that Defendant has a regular and established place of business in this Judicial District and has committed acts of infringement in this Judicial District, including, for example, by offering for sale or rental products that infringe the asserted patent.

## FACTUAL BACKGROUND

6. Plaintiff is the owner by assignment of all right, title and interest in and to United States Patent Number 6,788,882 B1, entitled "Systems and Methods for Storing a Plurality of Video Streams on Re-Writable Random-Access Media and Time-and Channel-Based Retrieval Thereof" ("the '882 Patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the United States Patent and Trademark Office ("USPTO").

7. A true and correct copy of the '882 Patent is attached hereto as Exhibit A.

8. The application that became the '882 Patent was filed on April 17, 1998, and was assigned U.S. patent application number 09/062,022 ("the '022 Application").

9. The '882 Patent issued on September 7, 2004, after a full and fair examination by the United States Patent Office.

10. The '882 Patent is valid and enforceable.

## SUBJECT MATTER OF THE '882 PATENT

11. The '882 Patent recognized that, by the time the '022 Application was filed in 1998, television viewers wanted to have greater control over their viewing experience: "As viewer habits change and the choice of programming (channels) grows, people want to adapt television programming to their schedule, rather than the other way around." ['882 Patent 1:20-23.]

12. Moreover, by the time the '022 Application was filed in 1998, viewers had grown accustomed to the capability of VCRs to record a program for later viewing. However, VCRs offered limited flexibility in how a user could record programs, advance forward or backward within a program, and "surf" between programs:

> The VCR, although extremely successful as a consumer device, has limited flexibility when the number of television channels increases. Also, the consumer has to remember to program the VCR to record the event. Commercially-available VCR+® technology has somewhat facilitated the process, but still requires tape management, scheduling and remembering when and what to program.
>
> One frequently employed method of viewing television involves rapidly browsing ("surfing") television channels to search for a program of interest, to watch several programs at once, or to skip ubiquitous commercials. Surfing has become even more popular given the advent of cable and satellite television, wherein many dozens of channels are available for viewing at any given time. On currently available single-screen systems, surfing must be done in real time and as time progresses. In other words, a user can watch one channel and record another channel on a VCR, but the user cannot watch a recorded program and simultaneously record another (unless the user is endowed with multiple VCRs).

['882 Patent at 1:24-48.]

13. The '882 Patent recognized that these problems required a technical solution:

> Therefore, what is needed in the art is a fundamental increase in the flexibility afforded a user in viewing programs aired over multiple channels. Moreover, what is needed in the art is a way of harnessing the power of digital computers to give the user more power in determining what he wants to watch," in order to provide "a fundamental increase in the flexibility afforded a user in viewing programs aired over multiple channels.

['882 Patent at 1:54-60.]

14. The '882 Patent provides technical solutions to these and other deficiencies in the prior art: "To address the above-discussed deficiencies of the prior art, the present invention provides a digital video recorder (DVR) and a method of operating the same." ['882 Patent at 1:63-65.]

15. For example, the '882 Patent addresses one deficiency in the art by providing that:

> In one embodiment, the DVR includes: (1) a mass data storage unit that concurrently and continuously receives and digitally stores a plurality of channels and (2) a channel viewer, coupled to the mass data storage unit, that retrieves a portion of one of the plurality of channels from the mass data storage unit based on a received command and presents the portion on a video display device.

['882 Patent at 1:65-2:5.]

16. As the '882 Patent explains, this addresses a deficiency in VCR technology:

> The digital video recorder of the present invention remedies the shortcomings of traditional video recording methods. The DVR does this by combining an essentially limitless (only limited by the cost of the equipment) capability concurrently to record a number of channels on a random-access medium while being able concurrently to play back any of these channels for viewing.

['882 Patent at 2:9-16.]

17. The specification identifies other technological deficiencies addressed by the subject matter disclosed and claimed in the '882 Patent. For example, "In one embodiment of the present invention, the mass data storage unit stores the plurality of channels together with

time information to allow the plurality of channels to be synchronized with respect to one another." ['882 Patent at 2:63-66.]

18. The independent claims of the '882 Patent likewise address these technological deficiencies of the prior art.

19. Claim 1 of the '882 Patent claims:

1. A digital video recorder (DVR) for recording a plurality of television broadcast programs, comprising:

a mass data storage unit that concurrently and continuously receives and digitally stores a plurality of television broadcast programs together with time information to allow said plurality of stored television broadcast programs to be synchronized with respect to one another; and

a channel viewer, coupled to said mass storage unit, that retrieves a portion of one of said plurality of stored television broadcast programs from said mass data storage unit based on a received command and presents said portion on a video display device.

20. Claim 19 claims:

19. A method of operating a digital video recorder, comprising the steps of: receiving a plurality of television broadcasts, each television broadcast including a video signal; and

concurrently and continuously digitally storing said plurality of television broadcasts on a mass data storage unit and storing said plurality of television broadcasts together with time information to allow said plurality of stored television broadcasts to be synchronized with respect to one another upon replay of said stored television broadcasts.

21. The subject matter disclosed and claimed in the '882 Patent provides solutions to other deficiencies in the art, as well.

22. For example, the '882 Patent discloses that in one embodiment, "the mass data storage unit stores the plurality of channels on a first-in first-out basis." ['882 Patent at 2:44-45.] This addresses a technological limitation regarding the volume of content that can be stored. Claim 2 of the '882 Patent also addresses this deficiency in the prior art.

5

23. In another example, the '882 Patent discloses that "[i]n one embodiment of the present invention, the mass data storage unit stores the plurality of channels in separate files based on channel and timeslot identification." ['882 Patent at 2:53-55.] This addresses a technological limitation of prior-art VCR technology regarding tape management and accessing recorded content. Claim 3 of the '882 Patent addresses this deficiency in the prior art.

24. In yet another example, the '882 Patent discloses that "[i]n one embodiment of the present invention, the channel viewer comprises a channel guide database containing pointers to locations in the mass data storage unit." The '882 Patent states that this "allows individual programs to be selected efficiently." ['882 Patent at 3:9-10.]

25. Similarly, the '882 Patent states that "[i]n a more specific embodiment, the channel guide contains links to locations in the mass data storage unit. The links may be hypertext links, wherein a user can initiate a retrieval and presentation of a particular portion of a selected channel simply by clicking on a particular location in the channel guide." ['882 Patent at 3:5-8, 14-19.]

26. Various claims of the '882 Patent address this deficiency in the prior art regarding the efficiency of selecting programs, including programs being stored on the DVR (e.g., claims 5, 7, 20, and 22).

27. The subject matter disclosed in the '882 Patent also addresses the deficiency in prior-art technology relating to advancing or rewinding through programs. For example, the '882 Patent describes harnessing the power of digital computers to provide the user more flexibility in advancing through programs:

> In one embodiment of the present invention, the channel viewer presents the portion nonlinearly. Sections of the portion may therefore be skipped, repeated,

> reversed, randomized or presented at a rate that differs from real-time. In an embodiment to be illustrated and described, commercials or other tedious content may be skipped to advantage. This gives rise to viewing concepts, such as "catch-up viewing" as described hereinafter.

['882 Patent at 3:31-38.]

28. The '882 Patent further discloses that "[i]n one embodiment of the present invention, the DVR selectively moves by one commercial time unit (CTU) within the one of the plurality of channels in response to the received command. The DVR can move forward or backward. In a more specific embodiment, the received command is employable to achieve catch-up viewing." ['882 Patent at 4:16-21.]

29. These technological improvements to the prior art providing greater flexibility in advancing through a television program are reflected in various claims of the '882 Patent, including claims 9, 17, 18, 24, 32, and 33.

30. The subject matter disclosed in the '882 Patent also addresses a technological limitation relating to the volume of content that may be stored on a DVR. For example, the '882 Patent discloses that "[i]n one embodiment of the present invention, the mass data storage unit receives, digitally compresses and digitally stores the plurality of channels." ['882 Patent at 3:39-43.] This technological problem with the prior art is also addressed in the claims of the '882 Patent, including claims 10 and 25.

31. Plaintiff notified Defendant of the '882 Patent and Defendant's infringement of the '882 Patent prior to filing this action.

32. Plaintiff notified Defendant of its infringement via a letter addressed to the Vice-President of Operations for Blue Ridge Communications (which is registered in Pennsylvania as

a fictitious name associated with Defendant). This letter was delivered to Defendant's principal office at 613 3rd Street, Palmerton, PA. 18071.

33. After receiving no response to its notice letter, Plaintiff filed suit against Blue Ridge Communications, Inc. in Delaware and served the Complaint at Defendant's principal office.

34. Plaintiff was thereafter contacted by counsel for Defendant informing Plaintiff that the proper defendant was Blue Ridge Communications Technologies, Inc., and that Blue Ridge Communications Technologies, Inc. is incorporated in Pennsylvania.

35. Plaintiff dismissed its suit against Blue Ridge Communications, Inc. in Delaware prior to filing this suit against Defendant.

## COUNT I – DIRECT PATENT INFRINGEMENT

36. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

37. Defendant has directly infringed the '882 Patent in violation of 35 U.S.C. § 271(a) by making, importing, using, selling, or offering for sale in the United States products that embody the patented invention, including at least claims 1-3, 5-9, 12, 13, 16-24, 27, 28, and 31-33.

38. Defendant's infringing Accused Products include, without limitation, its TiVo-powered DVRs and TiVo service, dual-tuner DVRs as described in the Passport Guide User Manual issued by Defendant under license from Rovi Corporation, and other as-yet-unknown products that satisfy each element of one or more asserted claims.

39. Rovi Corporation purchased TiVo Inc. in 2016 and is now known as TiVo Corporation.

40. The Accused Products satisfy each and every element of each asserted claim of the '882 Patent, as detailed in the preliminary claim charts attached hereto as Exhibit B and Exhibit C, and incorporated herein by reference, either literally or under the doctrine of equivalents.

41. Defendant conditions the receipt of benefits from using the Accused Products for which its customers have paid upon the use of the DVR recited in claims 1-3, 5-9, 12, 13, and 16-18, as well as performance of the steps of the methods recited in at least claims 19-24, 27, 28, and 31-33 of the '882 Patent.

42. For example, Defendant not only instructs its customers to use the Accused Products in an infringing manner, but if its customers want to obtain the benefits of the Accused Products for which they are paying, they must necessarily operate the Accused Products in an infringing manner due to the design of the Accused Products.

43. Therefore, the acts of Defendant's customers in using the DVR recited in claims 1-3, 5-9, 12, 13, and 16-18, as well as in performing the steps of at least method claims 19-24, 27, 28, and 31-33 of the '882 Patent, are attributable to Defendant.

44. Defendant's infringing activities are and have been without authority or license under the '882 Patent.

45. Defendant has had actual knowledge of the '882 Patent and Plaintiff's claims of infringement prior to the filing of this action, at least since receiving pre-suit notice of the '882 Patent from Plaintiff.

46. Defendant's infringement of the '882 Patent has been willful and deliberate. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT II – INDUCED PATENT INFRINGEMENT

47. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

48. Defendant has actively and intentionally, with prior knowledge of the '882 Patent and Plaintiff's claims of infringement, induced the direct infringement by others of at least claims 1-3, 5-9, 12, 13, 16-24, 27, 28, and 31-33 of the '882 Patent in violation of 35 U.S.C. § 271(b), in making, importing, using, selling, or offering for sale in the United States Accused Products that embody the patented invention as described in Count I, above.

49. Furthermore, as detailed in Exhibit B and Exhibit C, Defendant has instructed its customers to use the Accused Products in an infringing manner.

## JURY DEMAND

50. Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

A. An adjudication that one or more claims of the '882 patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

B. An accounting and an award to Plaintiff of damages adequate to compensate Plaintiff for the Defendant's acts of infringement, together with pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284;

C. That Defendant's infringement be found to be willful, and that the Court award enhanced damages pursuant to 35 U.S.C. § 284;

D. That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and expenses in accordance with 35 U.S.C. § 285; and

E. Any further relief that this Court deems just and proper.

This 23rd day of August, 2018.

STAMOULIS & WEINBLATT LLC

*Richard C. Weinblatt*

Richard C. Weinblatt (Pa. Bar #87932)
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
weinblatt@swdelaw.com

*Of Counsel:*

Daniel A. Kent
  dankent@kentrisley.com
  Tel: (404) 585-4214
  Fax: (404) 829-2412
Stephen R. Risley
  steverisley@kentrisley.com
  Tel: (404) 585-2101
  Fax: (404) 389-9402
Cortney S. Alexander
  cortneyalexander@kentrisley.com
  Tel: (404) 855-3867
  Fax: (770) 462-3299
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Plaintiff